## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

DOMINIQUE TABB,                         )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )     Case No. CIV-16-1179-D
                                        )
JOHN HILLIGOSS, *et al.*,               )
                                        )
                    Defendants.         )


# O R D E R

This matter is before the Court for review of the Supplemental Report and Recommendation [Doc. No. 38] issued by United States Magistrate Judge Gary M. Purcell pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Judge Purcell recommends granting the Motion for Summary Judgment of Defendants John Hilligoss and Nicky Gillespie [Doc. No. 32], denying Plaintiff's Motion for Disposition [Doc. No. 31], and dismissing without prejudice the action against Defendant A. Martin pursuant to 28 U.S.C. § 1915(e)(2)(B).

Plaintiff Dominique Tabb, a state prisoner appearing *pro se* and *in forma pauperis*, has filed a timely written objection to the Supplemental Report. Thus, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3). The Court "may accept, reject or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1).

This civil rights action under 42 U.S.C. § 1983 involves claims that Plaintiff's constitutional rights were violated by Defendants Hilligoss, Gillespie, and Martin during his confinement at Cimarron Correctional Center ("CCF"). Specifically, Claim 1 of the Complaint alleges that Defendants denied Plaintiff equal protection and engaged in racial discrimination against him (an African American) with regard to housing assignments. Claim 2 alleges that Defendants Hilligoss and Gillespie denied Plaintiff due process by placing him in segregation and "protective measures" status without following proper procedures. *See* Compl. [Doc. No. 1] at 12. Claim 3 alleges that Defendants acted with deliberate indifference to Plaintiff's safety when he refused certain housing assignments due to his criminal convictions (lewd or indecent proposals or acts to a child). Judge Purcell finds no merit in these claims based on the undisputed facts shown by the record, and finds as to Defendant Martin that the well-pleaded factual allegations of the Complaint do not state a plausible claim against her.[1]

In his Objection, Plaintiff challenges statements made by Judge Purcell on almost every page of the 28-page Supplemental Report except ones stating legal standards and principles. For ease of discussion, the Court will address Plaintiff's arguments according to subheadings of the Supplemental Report.[2]

---

[1] Judge Purcell also finds that Plaintiff has failed to show good cause for lack of timely service of Defendant Martin. However, he does not recommend a dismissal pursuant to Fed. R. Civ. P. 4(m).

[2] Plaintiff has waived further review of the portions of the Supplemental Report to which no objection is made. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Thus, Judge Purcell's summary of the Complaint, statement of procedural standards, and statement of substantive

Liberally construing Plaintiff's Objection, he asserts as a preliminary matter that Judge Purcell's Report should be rejected due to "an obvious bias toward Defendants." *See* Pl.'s Obj. [Doc. No. 39] at 1. Judge Purcell allegedly presents policies of the Oklahoma Department of Corrections ("ODOC") in a manner favorable to Defendants, and accepts their affidavits as true while disregarding contrary evidence. Upon consideration, the Court finds that Plaintiff simply disagrees with Judge Purcell's findings and conclusions, as discussed *infra*. Plaintiff presents no factual basis for a claim of judicial bias. *See United States v. Nicki*, 427 F.3d 1286, 1298 (10th Cir. 2005) (claim of bias requires "sufficient factual grounds . . . to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality;" ordinarily, a judge's words in the context of judicial proceedings "are insulated from charges of bias" and "adverse rulings cannot in themselves form the appropriate grounds for disqualification"). Therefore, the Court overrules this part of Plaintiff's Objection.

Judge Purcell summarizes in a "Background" section of the Supplemental Report the pertinent ODOC policy, "Inmate Housing," OP-030102. Although Plaintiff disagrees with some wording of the summary, his only substantive objection concerns the portion of the policy applicable to his housing assignment. Plaintiff states, correctly, that his assignment at CCF was generally governed by part III(A), which states: "Unrestricted (UR) inmates requiring a housing/cell assignment will be given the first available and appropriate assignment." *See* Special Report, Ex. 1 [Doc. No. 21-1] at 5. The remainder

---

principles governing equal protection, due process, and deliberate indifference claims, are adopted as though fully set forth herein. *See* Suppl. R&R at 4-8, 14, 17-19, 20-21 & 23-24.

of Plaintiff's Objection concerning this section of the Supplemental Report consists of argument regarding an appropriate housing assignment for him. This argument is based on factual assertions that are unsupported by any citation to the record, and therefore, it is disregarded.[3]

Turning to Judge Purcell's statement of "Uncontroverted Facts," Plaintiff challenges only certain parts of paragraphs 2-5, 7, 9, 13 and 14. The Court adopts all other facts stated by Judge Purcell as though fully set forth herein. *See* R&R at 8-13. Many disputed factual matters are not material to a resolution of Plaintiff's claims. For example, Plaintiff asserts that paragraph 2 erroneously states he was initially placed in Golf Unit (a general population, arrival pod) but he actually spent the first two days at CCF in Delta South before being moved to Golf Unit. This assertion, although correct, is immaterial to any legal issue.[4] The Court finds no need to resolve disputes that are immaterial to a disposition of the pending Motions.

Plaintiff objects to paragraph 3, which is relevant to his claims. Plaintiff agrees with Judge Purcell's statement that the housing unit where Plaintiff refused to be placed in May 2016, Echo Delta, was a general housing pod. Plaintiff objects to Judge Purcell's omission of the fact that Echo Delta was also a "security threat group" or STG pod that

---

[3] Plaintiff argues, for example, that he should not have been assigned to housing pods referred to as Echo Delta and Bravo North because they were "security threat group" or "STG" pods filled with members of certain gangs or affiliated groups, and neither housed convicted sex offenders like himself.

[4] Judge Purcell's statement is based on information provided by Defendants showing that Plaintiff was placed in Golf Unit "[w]ithin two days of his arrival." *See* R&R at 8-9, ¶ 2, (citing Defs.' Mot. at 3-4); Defs' Mot. Summ. J. at 3, ¶ 5 (citing Gillespie Aff. [Doc. No. 32-2], ¶ 7).

housed members of certain gangs. Plaintiff was not a member of a gang, and does not contend he had been threatened by any inmate in Echo Delta. According to Plaintiff, however, his criminal convictions would present a safety risk among STG inmates (if disclosed to them), thus making an STG pod an inappropriate placement.[5]

Regarding paragraph 4, Plaintiff does not dispute he was placed in administrative segregation after he refused the May 2016 housing assignment. He objects only to Judge Purcell's statement that the placement was consistent with ODOC housing policy. Plaintiff observes, correctly, that OP-030102 states an inmate's refusal of a housing or cell assignment for no documented reason may be grounds for discipline. Although Plaintiff viewed the segregation placement as punitive, he was not charged with misconduct for the refusal nor placed in disciplinary segregation. By his own account, Plaintiff was placed in "protective measures/administrative segregation." *See* Tabb Aff., ¶ 5; Obj. at 4 ("Plaintiff was placed onto Alpha South (protective measures) [on] . . . May 12, 2016.").

### 1. Equal Protection Claim

The crux of Claim 1 is an allegation that Plaintiff was treated more harshly than a Caucasian inmate who engaged in the same conduct. Plaintiff alleges that when a white inmate refused a reassignment to Echo Delta on May 11, 2016, he was allowed to return to

---

[5] According to Defendant Hilligoss, CCF's chief of unit management, CCF did not have specific STG pods, although an inmate's STG affiliation was considered in housing assignments. *See* Hilligoss Aff. [Doc. No. 32-4], ¶ 10. It is unclear whether Plaintiff's affidavit describing STG pods is based on personal information, as required by Fed. R. Civ. P. 56(c)(4). *See* Tabb Aff. [Doc. No. 37] at 16, ¶ 2. Nevertheless, the Court accepts Plaintiff's statement of fact for summary judgment purposes.

Golf unit, but when Plaintiff was directed to take the assignment to Echo Delta and refused, he was sent to administrative segregation.[6]

To establish an equal protection violation, Plaintiff must "show the defendants treated him differently than other similarly situated prisoners." *Brewer v. Gilroy*, 625 F. App'x 827, 838 (10th Cir. 2015) (unpublished) (citing *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006)).[7] The facts on which Plaintiff relies to support his equal protection claim do not show different treatment of similarly situated inmates. Accepting the facts shown by Plaintiff, he refused to go to Echo Delta due to concern about being a sex offender in an STG pod, and he was placed into administrative or "protective measures" segregation after he raised this safety concern about his cell assignment. There is no allegation the white inmate expressed a similar concern or refused for a similar reason, assuming he refused at all. Plaintiff presents no facts to show that the white inmate, who remains unidentified, was comparable to Plaintiff with regard to inmate characteristics that are pertinent to housing or cell assignments. *See* Pl.'s Obj., Ex. A [Doc. No. 39-1] at 3, § 4 (ODOC cell assessment form, listing "compatibility characteristics" to be considered in making appropriate cell assignment for unrestricted inmates).

Further, to establish racial discrimination, Plaintiff must show Defendants "were motivated by racial animus." *See Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269

---

[6] Plaintiff affirmatively states that his racial discrimination claim is not based on the cell assignment itself. *See* Pl.'s Obj. at 7 (disavowing "any allegations that race played a factor in Gillespie's decision to move Plaintiff or the Caucasian inmate to Echo Delta").

[7] Unpublished opinion cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

(10th Cir. 1989) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). Plaintiff does not contend Defendants acted with discriminatory intent or purpose in making the May 2016 cell assignment, and he presents no facts from which to infer that Defendants' decision to place him in administrative segregation was racially motivated. *See*, *e.g.*, *Mallard v. Tomlinson*, 206 F. App'x 732, 735-36 (10th Cir. 2006) (unpublished) (applying burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to inmate's § 1983 claim of racial discrimination in prison job transfer).

For these reasons, upon *de novo* consideration of the issues presented, the Court finds that Defendants Hilligoss and Gillespie are entitled to summary judgment on Plaintiff's equal protection claim.

### 2. Procedural Due Process

An essential element of Claim 2 is a constitutionally protected liberty implicated by Plaintiff's May 2016 placement in administrative or protective measures segregation. Judge Purcell analyzes this issue using the factors identified in *Estate of DiMarco v. Wyoming Dep.'t of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007), to determine whether conditions of confinement "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). More recently, the Tenth Circuit has held that the *DiMarco* factors do not "serve as a constitutional touchstone" but they may facilitate "a fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and

confinement." *Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012). The court further stated in *Rezaq*: "The 'ordinary incidents of prison life' will differ depending on a particular inmate's conviction and the nature of nonpunitive confinement routinely imposed on inmates serving comparable sentences." *Id*. (citation omitted).

Upon *de novo* consideration, the Court reaches the same conclusion as Judge Purcell with respect to a liberty interest. The *DiMarco* factors provide a useful analysis in this case. The Court first finds that Plaintiff's placement in administrative or "protective measures" segregation was plainly related to a legitimate penological interest. Even though Plaintiff viewed it as punishment, he admits it was triggered by his expression of concern that the nature of his criminal conviction made him a target of attack. Second, Plaintiff presents facts (without record support) to show that his segregation pod, Alpha South, had harsher conditions than general population housing with respect to restriction of movement, participation in programs, and access to religious and law library services. However, the alleged conditions were not extreme. Third, Plaintiff presents no documented facts to show that the segregation lengthened the duration of his incarceration; he does not allege it resulted in a loss of earned credits.

Finally, while the confinement lasted several months, Plaintiff stayed there after June 6, 2016, pursuant to a written agreement that resolved an inmate grievance regarding his placement in Alpha South. Plaintiff agreed to remain there until an opening occurred on Fox unit. Beginning in July 2016, Plaintiff refused three other housing assignments

and was charged with misconduct for the refusals. At that point, his confinement was no longer simply an administrative segregation matter.

For these reasons, the Court finds that Defendants Hilligoss and Gillespie are entitled to summary judgment on Plaintiff's due process claim.

### 3. Deliberate Indifference to Inmate Safety

The deliberate indifference standard "'involves both an objective and a subjective component.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). "The prisoner must first produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The subjective component is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Although Plaintiff objects to Judge Purcell's finding that neither component of a deliberate indifference claim is satisfied under the facts presented, Plaintiff's theory of liability remains unclear. Liberally construing the Objection, Plaintiff claims that his assignments to two particular housing pods, Echo Delta and Bravo South, were not appropriate in light of his criminal convictions and that Defendants acted with deliberate indifference to his safety in making those assignments. But Plaintiff rejected those assignments, and it does not appear that he suffered a serious deprivation because of them.

Also, the facts do not show that either Defendant Hilligoss or Gillespie was aware of and disregarded a particular risk to Plaintiff's safety.

Therefore, Defendant Hilligoss or Gillespie are entitled to summary judgment on Claim 3 of Plaintiff's Complaint.

### 4.    Dismissal of Defendant Martin

Plaintiff asserts Claims 1 and 3 of his Complaint against Defendant Martin.    The alleged racial discrimination by Defendant Martin is based on allegations that she directed Plaintiff and two other African American inmates to transfer to Bravo North and charged them with misconduct when they refused, while inmates of other races were transferred to "compound 2." *See* Compl. at 11.    Defendant Martin's alleged deliberate indifference is based on a lack of concern when Plaintiff refused to go to Alpha Bravo due to his criminal convictions. *Id.* at 13.    Judge Purcell finds insufficient factual allegations to infer a racially motivated housing decision by Defendant Martin with respect to a transfer of inmates to "compound 2" rather than Bravo North, or to infer deliberate indifference to an excessive risk of harm if Plaintiff had been moved to Bravo North (which did not occur). Plaintiff objects only to the second finding with regard to Claim 3, and does not identify any other factual allegations that support his claims.    *See* Pl.'s Obj. at 14.

Upon *de novo* consideration, the Court agrees with Judge Purcell's assessment that the Complaint fails to state a plausible claim against Defendant Martin.    In addition to the reasons stated by Judge Purcell, the Court notes that Plaintiff repeatedly alleges with respect to both claims that the decision to assign Plaintiff to Bravo North was made by

Defendant Hilligoss. *See id*. at 9 (alleging Plaintiff's case manager, Defendant Martin, told him to move to Bravo North "per Hilligoss" and that "it was Hilligoss' doing"); *id*. at 11 ("Martin per Hilligoss" demanded that he move to Bravo North); *id*. at 13 ("Hilligoss told [Martin] to move" Plaintiff to Bravo North). Plaintiff fails to provide "enough factual matter (taken as true) to suggest that he . . . is entitled to relief" against Defendant Martin under § 1983. *See Robbins v. Okla*., 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotation omitted).

Therefore, the Complaint against Defendant Martin is subject to dismissal under § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

IT IS THEREFORE ORDERED that the Supplemental Report and Recommendation [Doc. No. 38] is ADOPTED, as set forth herein. Defendants John Hilligoss and Nicky Gillespie's Motion for Summary Judgment [Doc. No. 32] is GRANTED; Plaintiff's Motion for Disposition [Doc. No. 31] is DENIED; and the action against Defendant A. Martin is DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). A separate judgment shall be entered accordingly.

IT IS SO ORDERED this 30th day of March, 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE